```
1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
2                       MIDLAND-ODESSA DIVISION

3   UNITED STATES OF AMERICA  ) Docket No. Mo 17-CR-136(2) DC
                               )
4   vs.                        ) Midland, Texas
                               )
5   SARA EUGENIA GALLEGOS      ) January 29, 2018

6
                      TRANSCRIPT OF REARRAIGNMENT/PLEA
7               BEFORE THE HONORABLE B. DWIGHT GOAINS

8

9   APPEARANCES:

10  For the United States:      Ms. Brandi Young
                                Assistant U.S. Attorney
11                              400 West Illinois Avenue, Suite 1200
                                Midland, Texas 79701
12

13

14  For the Defendant:          Mr. Aaron E. Eckman
                                Law Office of Aaron E. Eckman
15                              306 West Wall Street, Suite 822
                                Midland, Texas 79701
16

17

18  Transcriber:                Ms. Lily Iva Reznik, CRR, RMR
                                501 West 5th Street, Suite 4153
19                              Austin, Texas 78701
                                (512)391-8792
20

21

22

23

24

25  Proceedings reported by electrical digital sound recording,
    transcript produced by computer.
```

```
 1              (Proceedings commence at 4:10 p.m.)

 2              THE CLERK:  The Court calls:  Midland 17-CR-136, The

 3  United States of America vs. Sara Eugenia Gallegos.

 4              MS. YOUNG:  Brandi Young on behalf of the United

 5  States.

 6              MR. ECKMAN:  Aaron Eckman on behalf of Ms. Gallegos.

 7              THE COURT:  And what was the last name, sir?

 8              MR. ECKMAN:  Aaron Eckman.

 9              THE COURT:  Ackman?

10              MR. ECKMAN:  Eckman.

11              THE COURT:  Eckman.

12              MR. ECKMAN:  Good to see you, sir.

13              THE COURT:  See, your name's not on the docket.

14              That motion to substitute was filed, though, right, and

15  signed?

16              MS. YOUNG:  Yes, your Honor.  Mr. Parras was allowed to

17  withdraw.

18              THE COURT:  Okay.

19              MS. YOUNG:  He was initially retained, and that's

20  already been assigned appointing Mr. Eckman through CJA.

21              THE COURT:  Okay.  Very good.

22              All right.  We need to arraign her first on this

23  superseding indictment.

24              Are you Ms. Gallegos?

25              THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  There's been a superseding indictment filed

2    against you in MO 17-CR-136.

3          The grand jury charges in Count 1:  That on or about

4    June the 19th, 2017, in the Western District of Texas, that you

5    and others, aided and abetted, unlawfully, knowingly and

6    intentionally possessed with intent to distribute a controlled

7    substance which involved 50 grams or more of actual

8    methamphetamine, violation of Title 21, United States Code,

9    Section 841(a)(1) and 841(b)(1)(A), Title 18, United States Code,

10   Section 2.

11         Do you understand what you're being charged with in

12   Count 1?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  The full range of punishment on Count 1 is

15   a minimum of 10 years imprisonment to a maximum of life

16   imprisonment, five years -- minimum of five years to life

17   supervised release, up to a $10 million fine, and $100 special

18   assessment.

19         Do you understand your full range of punishment on

20   Count 1?

21         THE DEFENDANT:  Yes, your Honor.

22         THE CLERK:  Can you just speak up into --

23         THE DEFENDANT:  Yes.

24         THE COURT:  Count 2, states that on or about June the

25   19th, 2017, in the Western District of Texas, that you, aided and

1  abetted by others, did intentionally and knowingly possess

2  firearms, to wit: a .38 Special Taurus Revolver, Raven Arms .25

3  automatic handgun, a Jimenez .380 caliber handgun, and a Colt

4  1911 handgun, .45, CN Romarm, AK 7.62-by-39, and an AR-15,

5  bearing Serial Number 15188305, in furtherance of the

6  drug-trafficking crime set forth in Count 1 and 3 of this

7  indictment, which drug-trafficking counts are incorporated by

8  reference herein as if set forth, in violation of Title 18,

9  United States Code, Section 924(c) and Title 18, United States

10  Code, Section 2.

11          Do you understand what you're being charged with in

12  Count 2?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Now, Count 2 is a mandatory five years of

15  imprisonment to run consecutively with the -- whatever sentence

16  you get on Count 1 plus three years of supervised release and

17  $100 special assessment.

18          Do you understand your full range of punishment on

19  Count 1 -- 2?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  You gotta speak up.

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  All right.  Count 3, that beginning on or

24  about December the 1st, 2016 and continuing to on or about June

25  the 19th, 2017, in the Western District of Texas, the Northern

1   District of Texas and elsewhere, you did combine, conspire,

2   confederate and agree with others, known and unknown to the grand

3   jury, to possess with intent to distribute a controlled

4   substance, which offense involved 50 grams or more of actual

5   methamphetamine.

6          Do you understand what you're being charged with in

7   Count 3?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Full range of punishment on Count 3, again,

10  is a minimum of 10 years imprisonment to life imprisonment, a

11  minimum of five years supervised release up to life supervised

12  release, up to $10 million fine, and $100 special assessment.

13         Do you understand your full range of punishment on

14  Count 3?

15         THE DEFENDANT:  That's the one that's going to be

16  dismissed?

17         THE COURT:  Gotta speak up.

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  All right.  Count 4, that on or about June

20  the 19th, 2017 in the Western District of Texas, you, having been

21  convicted of a crime punishable by imprisonment for a term

22  exceeding one year, namely, for the felony offense of transport

23  or sell of dangerous drugs in Cause No. CR-2009-008280002, on or

24  about February the 17th, 2010 in the Superior Court, State of

25  Arizona, County of Maricopa, RCC Downtown, did knowingly possess

1  in and affecting commerce, to-wit: a Raven Arms, .25 automatic

2  handgun, Jimenez .380 caliber handgun, and a Colt 1911 handgun,

3  which had all been shipped and transported in interstate and

4  foreign commerce in violation of federal law.

5           Let me get the range of punishment on that.

6           MS. YOUNG:  Your Honor, I believe it's no mandatory

7  minimum, a term of imprisonment not to exceed 10 years.

8           THE COURT:  Okay.

9           MS. YOUNG:  Maximum term of three years of supervised

10 release, a fine not to exceed $250,000, and a $100 special

11 assessment.

12          THE COURT:  Okay.  Do you understand that full range of

13 punishment as read by the U.S. Attorney?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  Have you received a copy of

16 this superseding indictment?

17          THE DEFENDANT:  Uh-huh.  Yes.

18          THE COURT:  Have you had an opportunity to go over this

19 superseding indictment with your attorney?

20          THE DEFENDANT:  Yes, I did.  Just this part.

21          THE COURT:  All right.  For the purpose of this part of

22 the hearing, I'm going to enter a plea of not guilty for you.

23 It's my understanding you're going to enter a plea per plea

24 agreement on the superseding indictment?

25          THE DEFENDANT:  Yes, your Honor?

1           THE COURT:  Okay.  Are we ready to go forward with

2    that?

3           MS. YOUNG:  I believe we are, your Honor.  There's a

4    couple of housekeeping matters that I think we need to take up

5    just for the Court.

6           THE COURT:  Okay.

7           MR. ECKMAN:  And first, your Honor, I want to answer a

8    question that Ms. Gallegos had.

9           THE COURT:  Okay.

10          MR. ECKMAN:  If I could just have one second.

11          THE COURT:  Let me take a few minutes.

12          MR. ECKMAN:  All right.  Thank you, your Honor.

13          THE COURT:  You're welcome, sir.

14          MS. YOUNG:  If it may please the Court.

15          Ms. Gallegos, as stated, previously was represented.

16   She had retained counsel.  Mr. Parras represented Ms. Gallegos

17   four or five-month period of time.  At the last status

18   conference, prior to the motions to withdraw, an offer was

19   extended by the government to plead to a lesser-included offense

20   of Count 1 and the firearms.  That offer expired and it was

21   stated so forth on the record.  There was a record of that when

22   Ms. Gallegos was represented by Mr. Parras.

23          Mr. Eckman was then substituted in when Mr. Parras was

24   allowed to withdraw.  He did contact my office to see if my

25   office would extend that offer again, and the United States has

1    declined to do that.  That offer has expired and is not on the

2    table.  But Mr. Eckman did inquire of that.  And so, he asked

3    that I inform the Court that he had done that in front of his

4    client.  That offer expired and that was stated in open court.

5           Additionally, in negotiations to arrive at this plea

6    agreement, the indictment was superseded as the Court just

7    arraigned Ms. Gallegos on that.  The government at this point has

8    foregone the filing of a super -- of a sentencing enhancement

9    information because of Ms. Gallegos' prior drug-trafficking

10   conviction out of Arizona.  She could potentially, should the

11   government choose to file that information, be facing a minimum

12   mandatory term of 240 months or 20 years on Counts 1 and 3.  As

13   part of the negotiations and what's before the Court, the

14   government has foregone filing that, is not filing that, and

15   cannot be filed after today's hearing.  She has to receive notice

16   of that before entering into a plea.

17          THE COURT:  Okay.

18          MS. YOUNG:  Therefore, the agreement that is before the

19   Court is a plea to Count 1 and Count 2 with the mandatory

20   minimums as the Court read and stated.  And that's the status of

21   where we're at today.  That's the only offer.  There's not going

22   to be another offer.  Today's the deadline for this offer.  If

23   not, we'll proceed and we'll have our trial setting.

24          THE COURT:  Okay.  Is that your understanding, Mr.

25   Eckman?

```
1              MR. ECKMAN:  Yes, your Honor.

2              THE COURT:  And is that your understanding, Ms.

3   Gallegos?

4              MR. ECKMAN:  We're ready, your Honor.

5              THE COURT:  Okay.  All right.

6              Are you Ms. Gallegos?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Now, you're going to have to speak up.

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  All right.  And you're being represented by

11  Mr. Eckman.  The government's being represented by Ms. Young.

12             Please raise your right hand, the clerk's going to

13  administer an oath.

14             (Defendant sworn.)

15             THE COURT:  All right.  Ms. Gallegos, you're now under

16  oath.  If you answer any of my questions falsely, you may be

17  prosecuted for perjury or false statement.

18             Do you understand?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Now, I have before me a consent to the

21  administration of the guilty plea by a United States Magistrate

22  Judge.

23             Did you go over this document with your attorney?

24  Here, I'll read it to you.

25             THE DEFENDANT:  Yes.
```

1          THE COURT:  It says, I, Sara Eugenia Gallegos,

2    defendant in this cause, with the advice and counsel of my

3    attorney, hereby consent to be advised of my rights and enter a

4    voluntary plea of guilty before a United States Magistrate Judge.

5    I understand that my plea -- guilty plea is subject to approval

6    and final acceptance by a United States District Judge and that

7    sentencing will be conducted by a United States District Judge.

8          Now, you can go right upstairs and you can plead guilty

9    before the United States District Judge, no problem.  But if you

10   want to plead guilty before me, you have to sign this waiver.

11         Is that what you wish to do?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Is that your signature on the form?

14         THE DEFENDANT:  Yes.

15         THE COURT:  All right.  The Court accepts your written

16   waiver to plead guilty before me.

17         Now, I've been advised that you wish to plead guilty.

18   I believe it's to Count 1 and Count 2 only of the superseding

19   indictment; is that correct?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Now, the charge you're about to plead

22   guilty to is a felony charge, again, therefore, you have the

23   right to enter this guilty plea before the United States District

24   Judge.  However, you've consented to plead guilty before me.  I'm

25   a United States Magistrate Judge.

1          Have you had sufficient time, Mr. Eckman, to discuss

2    this case with your client, to discuss with her any possible

3    defenses she might have to the charges, as well as her rights?

4          MR. ECKMAN:  I have, your Honor.

5          THE COURT:  Mr. Eckman, do you believe your client has

6    both a factual as well as a rational understanding of the

7    proceedings against her?

8          MR. ECKMAN:  I believe she does.

9          THE COURT:  Do you have any doubt as to your client's

10   competency to enter a plea?

11         MR. ECKMAN:  I do not, your Honor.

12         THE COURT:  And, Mr. Eckman, have you presented all

13   written and formal government offers to your client?

14         MR. ECKMAN:  I have.

15         THE COURT:  Ms. Young, does the government have any

16   information that would be relevant to defendant's competency to

17   enter a plea?

18         MS. YOUNG:  The United States has no information

19   regarding the competence of the defendant and believes she's

20   competent to proceed, your Honor.

21         THE COURT:  Ms. Gallegos, have you ever suffered or do

22   you now suffer from any type of mental or physical impairment?

23         THE DEFENDANT:  No.

24         THE COURT:  Are you under the influence of any type of

25   narcotic drugs or medication?

```
 1              THE DEFENDANT:  No.
 2              THE COURT:  All right.  I got a plea agreement.  I
 3  believe this has already been filed; is that correct?
 4              MS. YOUNG:  Yes, sir.
 5              THE COURT:  Let me just go through a little bit of this
 6  plea agreement, make sure you understand it.  You're going to
 7  plead guilty to Counts 1 and 2 of the above-captioned indictment,
 8  and that's a superseding indictment now.
 9              I read your minimum and maximum penalties, and we'll go
10  through those again here in a few minutes.  There's also a
11  factual basis contained in the plea agreement, which we'll ask
12  the U.S. Attorney to read a little later.  Now, part of this plea
13  agreement, you've waived your right to appeal.
14              Do you understand that?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Gotta speak up.
17              THE DEFENDANT:  Yes, your Honor.
18              THE COURT:  All right.  And, let's see, also, the
19  government's filed a notice that this is -- to what they call a
20  5K1.1.  That means if you give -- if you cooperate, you give
21  information and they accept it, they can recommend to the
22  district judge that he lower your sentence.  The judge is not
23  bound by that recommendation, but the most important part is
24  whether you cooperated with the government or not in any type of
25  debriefing, that call is strictly theirs to make.
```

1          Do you understand?

2          THE DEFENDANT:  Yes.

3          THE COURT:  So the government's got to recommend that

4   you did cooperate.

5          You're a U.S. citizen; is that correct?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  So there's no immigration consequences.

8   All right.

9          All the other counts in the superseding indictment will

10  be dismissed at the time of sentencing per your plea agreement.

11  Also, we have a waiver of Rule 32 time limits.

12          Did you go over this with your attorney?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Did you understand those waiver -- that

15  waiver?

16          THE DEFENDANT:  I -- just to know what the Rule 32 is.

17  I mean, I did understand everything that says.

18          THE COURT:  Okay.  Let me read -- okay.  I'll go over

19  it with you.

20          It says, Rule 32 of the Federal Rules of Criminal

21  Procedure and Rule 32 of the local rules of United States

22  District Court for the Western District of Texas specify time

23  limits for the disclosure and submission of the presentence

24  report.  The defendant and government have been apprised of these

25  time limits, hereby waive same, and the parties agree by waiving

1  these limits, the following will apply.  Her probation officer

2  must give the presentence report to the defendant, the

3  defendant's attorney, and the attorney for the government, at

4  least 24 days before sentencing.  Delivery of an extra copy of

5  the presentence report to defendant's attorney constitutes giving

6  the report to the defendant.

7          Reviewing the report.  Within 10 days after the report

8  is given, the attorney for the defendant must certify to the

9  probation officer the defendant has reviewed the presentence

10  report and consulted with the attorney regarding the report.

11          Objecting to the report.  Within 10 days after the

12  presentence report is given, the parties must state in writing

13  any objections to the report.  The parties must submit objections

14  to the probation officer and the opposing party.

15          Acting on objections.  Within 10 days after the

16  presentence report is given, the parties must state in writing

17  any objections to the report, and the parties must submit

18  objections to the probation officer and the opposing party.

19          Acting on objections.  Within 10 days after receiving

20  the objections, the probation officer may meet with the parties

21  to discuss the objections, investigate further, and revise the

22  presentence report as appropriate.  And at least four days before

23  sentencing, the probation officer will submit the presentence

24  report, any revision of the report, and any addendum to the court

25  and the parties.

```
1              So do you understand that document?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Is that your signature on the document?

4              THE DEFENDANT:  Yes.

5              THE COURT:  All right.  The Court will sign this

6    document approving this.

7              All right.  And the plea agreement has been filed into

8    the record and the Court will accept that.

9              So have you discussed with your attorney the charges

10   you're about to plead guilty to?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Let me get your superseding indictment

13   again.  Get all my apples up here.

14             All right.  You're about to plead guilty to Count 1 and

15   2 of your superseding indictment.  Count 1 states that on or

16   about June the 19th, 2007, in the Western District of Texas, that

17   you and others, aided and abetted, unlawfully, knowingly,

18   intentionally possessed with intent to distribute a controlled

19   substance, which involved 50 kilograms or more of

20   methamphetamine, in violation of Title 21, United States Code,

21   Section 841(a)(1), 841(b)(1)(A), and Title 18, United States

22   Code, Section 2.

23             Do you understand what you're being charged with in

24   Count 1?

25             MS. YOUNG:  I believe the Court said kilograms.  It's
```

1    50 grams, unless there's a typo.  Fifty grams or more.

2            THE COURT:  All right.  It is 50 grams.  What did I

3    say?

4            MS. YOUNG:  I think you said kilograms.

5            THE DEFENDANT:  Fifty kilograms.

6            MS. YOUNG:  Because the last case -- the last case was

7    a marihuana case, but this one's 50 grams.

8            THE COURT:  All right.  Sorry about that.  The actual

9    meth of 50 grams or more.

10           Do you understand what you're being charged with in

11   Count 1?

12           THE DEFENDANT:  With the grams, yeah.

13           THE COURT:  Okay.  It's more than 50.  All right.

14           Your full range of punishment is up to 10 year --

15   minimum of 10 years to life, up to a $10 million fine, a minimum

16   of five years supervised release up to life supervised release,

17   and $100 special assessment.

18           Do you understand your full range of punishment on

19   Count 1?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Count 2 states that on or about June the

22   19th, 2017, in the Western District of Texas, that you and

23   others, aided and abetted, did intentionally and knowingly

24   possess firearms, to-wit: a .38 Special Taurus revolver, a Ravens

25   Arm, .25 automatic handgun, Jimenez .380 caliber handgun, a Colt

1   1911 handgun, a .45 caliber, CN -- and a CN Romarm AK 7.62-by-39,

2   and an AR-15, bearing Serial No. 15188305, in furtherance of such

3   violation, furtherance of the drug-trafficking crimes set forth

4   in Count 1 of the indictment, which defendant counts are

5   incorporated by reference hereto as set forth in Title 18, United

6   States Code, Section 924(c) and Title 18, United States Code,

7   Section 2.

8           Do you understand what you're being charged with in

9   Count 2?

10          THE DEFENDANT:  Yes.

11          THE COURT:  I believe Count 2 is a mandatory five years

12  imprisonment to run consecutive with your sentence in Count 1.

13          Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Up to three years of supervised release and

16  $100 special assessment.

17          So do you understand your full range of punishment on

18  Count 2?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Now, the sentence in your case will be

21  determined by the district judge.  The district judge in doing so

22  will consider the sentencing guidelines that are established by

23  the United States Sentencing Commission.

24          Have you had an opportunity to discuss with your

25  attorney how the sentencing guidelines might affect your case?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, I understand, Ms. Young, that this

3  plea has been taken after the plea agreement; is that -- after

4  the deadline on the plea agreement.

5          MS. YOUNG:  That is correct, your Honor.  The plea

6  deadline -- and I don't recall the specific date, but it was the

7  last date that we were in court.  The plea deadline was extended

8  a couple of times by Mr. Parras to see if negotiations.  But once

9  negotiation failed, the plea deadline has passed, and the Court

10 has warned Ms. Gallegos of that occurrence.  And so, acceptance

11 of responsibility will be solely at the discretion of the Court,

12 but it has passed.

13         THE COURT:  All right.  Do you understand, Ms.

14 Gallegos, that you were informed that the plea agreement you

15 entered into was beyond the plea agreement, viewed as untimely,

16 and that while you and your attorney may argue to the district

17 court for acceptance of responsibility at sentencing, there's no

18 guarantee that you will receive such credit and that you

19 understand -- do you understand that?

20         MR. ECKMAN:  One moment, your Honor.

21         THE COURT:  You bet.

22         MR. ECKMAN:  Thank you, your Honor.

23         THE COURT:  All right.  Do you understand that, Ms.

24 Gallegos?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  And do you still wish to plead guilty to

2   Count 1 and 2 of your superseding indictment?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Now, in your case, there's a mandatory

5   minimum penalty of imprisonment prescribed by statute, and a

6   higher mandatory minimum penalty may be recommended after

7   application of the guidelines to your case.  By law, you cannot

8   receive probation.

9          Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  There's no longer any possibility of parole

12   under federal law.  Any imprisonment you receive's the time you

13   will serve less credit for good time.

14          Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  The Court also has the authority to assess

17   a fine in your case.

18          Do you understand that, Ms. Gallegos?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Ms. Young, is there any type of restitution

21   or anything?

22          MS. YOUNG:  There's no restitution that I'm aware of at

23   this time, your Honor.

24          THE COURT:  All right.  Now, Ms. Gallegos, again,

25   you're looking at a term of supervised release is the term of

1    supervision which must be served after you complete your term of

2    imprisonment.  On Count 1, you're looking at five years to life

3    of supervised release.  Count 2, up to three years of supervised

4    release.

5            Do you understand that?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  While on supervised release, you will be

8    required to comply with various conditions.  Failure to comply

9    with any of those conditions could result in revocation of your

10   supervised release.  If your supervised release is revoked, you

11   may be required to serve an additional term of imprisonment equal

12   to the term of supervised release to which you were sentenced.

13           Do you understand that?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  In addition, you will not receive credit

16   for any time that you've already served on the term of supervised

17   release, in the event the Court revokes it.

18           Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Under the Victims of Crime Act, you'll be

21   required to pay a $100 special assessment.  This is in addition

22   to any restitution and/or fine the Court may impose and is

23   payable immediately after sentencing.  Now, that's two counts, so

24   you're looking at $200 special assessment.

25           Do you understand that?

```
1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  All right.  Now, before taking your guilty

3   plea, there are a number of rights I must advise you of.  As we

4   go through these rights, if you do not understand what I'm

5   saying, you may ask me to repeat it or you may stop and talk to

6   your attorney about it.

7              Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Have you had enough time to fully discuss

10  your case with your attorney and any possible defenses you might

11  have to the charges?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Are you satisfied with your attorney's

14  representation of you?

15             THE DEFENDANT:  Yes.

16             THE COURT:  You have a right to plead not guilty to

17  these charges.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Now, you're also entitled to a trial by

21  jury.

22             Do you understand that very important constitutional

23  right?

24             THE DEFENDANT:  Yes.

25             THE COURT:  At the trial and at every stage of the
```

1    proceedings against you, you have the right to the assistance of

2    your attorney.

3            Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  At the trial, you'd be presumed to be

6    innocent.  The government's required to prove your guilt beyond a

7    reasonable doubt on each element of the indictment by competent

8    evidence before you can be found guilty.  You never have to prove

9    you're innocent.

10           Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  In the course of the trial, you would have

13   the right to confront and cross-examine any witnesses the

14   government has against you.  You would have the right to testify

15   or to remain silent during this trial.  No guilt can be found

16   from the fact that you did not testify.

17           Do you understand that?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  If you plead guilty, you will give up your

20   right to a trial and the other rights I've just covered, and

21   there will be no further trial.  The district judge, after

22   accepting your guilty plea, will then sentence you on the basis

23   of your guilty plea based on that presentence report.

24           Do you understand that?

25           THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Understanding that you have

2    that right to a trial by jury and you're waiving that trial by

3    jury; is that correct?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  I'll ask, Ms. Young, if you'll

6    read Count 1 from your indictment -- or superseding indictment

7    and we'll take your plea.

8          MS. YOUNG:  Count 1, that on or about June 19th, 2017,

9    in the Western District of Texas, the defendant, Sara Eugenia

10   Gallegos, aided and abetted by Emilio Turrubiartez, Jr., and

11   others, unlawfully, knowingly and intentionally possessed with

12   intent to distribute a controlled substance, which offense

13   involved 50 grams or more of actual methamphetamine, in violation

14   of Title 21, United States Code, Sections 841(a)(1) and

15   841(b)(1)(A), and Title 18, United States Code, Section 2.

16         THE COURT:  All right.  Ms. Gallegos, did you

17   understand the charge contained in Count 1 of your superseding

18   information as read by the U.S. Attorney?

19         THE DEFENDANT:  Yes.

20         THE COURT:  How do you plead to Count 1 of your

21   superseding information, guilty or not guilty?

22         THE DEFENDANT:  Guilty.

23         THE COURT:  Listen carefully as the U.S. Attorney reads

24   the factual basis in your Count 1.

25         MS. YOUNG:  Had this case gone to trial, the United

States would be prepared to prove the following facts beyond a reasonable doubt:

On Sunday, June 19th, 2017, Detective Garcia and other officers with Midland Police Department met with a cooperating source. The cooperating source advised that he or she knew a male by the name of Emilio Turrubiartez and stated that Turrubiartez sold large quantities of methamphetamine. Through further investigation, Turrubiartez was identified as Emilio Turrubiartez, Jr. and confirmed with the CS. A check of Turrubiartez through NCIC/TCIC showed that he had an outstanding felony warrant for felon in possession of a firearm out of the Dallas-Fort Worth area.

Later the same day, the CS made contact with Turrubiartez, and he, Turrubiartez, advised that he would be en route to the West Texas Inn and Suites, located at 1000 West Interstate 20 frontage, in order to deliver three ounces of methamphetamine. As Turrubiartez pulled in the parking lot, he made contact with the CS and advised that he arrived and was in a green truck. Surveillance was maintained on Turrubiartez and the passenger, who was later identified as Sara Gallegos. The vehicle was identified as a green Chevrolet pickup. Turrubiartez parked on the west end of the hotel and exited the vehicle. Detectives observed Turrubiartez fidgeting around in the back portion of the truck. Detectives at this time called a marked city of Midland patrol unit to make contact with Turrubiartez and

1    the passenger.

2             Officer J. Claire and Officer Poe arrived in the

3    parking lot to take Turrubiartez into custody for his outstanding

4    warrant.  Officer Claire made contact with Turrubiartez and

5    observed a loaded .38 Special Taurus revolver in Turrubiartez's

6    front waistband.  As Officer Claire removed the firearm from

7    Turrubiartez's waistband, a baggy containing three individual

8    baggies of suspected methamphetamine was also discovered.

9             While Officer Poe was trying to get Gallegos to exit

10   the vehicle by giving multiple verbal commands demanding so,

11   Gallegos finally began to exit the vehicle, and Detective Garcia

12   approached the vehicle to assist.  Gallegos took an extended

13   period of time before she finally complied and exited the

14   vehicle.  Officers ordered Gallegos to her knees and placed her

15   in handcuffs.  And at this time, Detective Garcia was advised

16   what was located on Turrubiartez.  Officers and detectives did a

17   probable cause search on the vehicle and discovered several more

18   items of contraband.

19             A search of Gallegos' purse led to the discovery of a

20   large amount of United States currency, $4,342 with the majority

21   of it in rubber bands, two small baggies containing

22   methamphetamine, approximately 6.2 grams, and three pistols.  The

23   pistols were identified as a loaded Raven Arms, .25 auto, a

24   Jimenez .380 caliber, and a Colt 1911, .45 caliber.  Detective

25   Garcia read Gallegos the Miranda warnings, and Gallegos advised

1  that she understood her rights and provided a statement.

2  Gallegos advised that she and Turrubiartez drove from Fort Worth

3  to Post, Texas and then, on to Midland, Texas to make contact

4  with a female.  Gallegos admitted that she smoked methamphetamine

5  along the way to Midland due to drowsiness.  Gallegos claimed

6  that she obtained the methamphetamine located in her purse from

7  Turrubiartez and it was only a small quantity.  Gallegos stated

8  that she and Turrubiartez came to Midland because they were going

9  to a ranch to shoot guns with their friends.  Detective Garcia

10  asked Gallegos if she possessed any firearms, and she advised she

11  owned the small guns located in her purse.  Gallegos initially

12  claimed that Turrubiartez must have put the methamphetamine in

13  her purse but, later, admitted that her fingerprints would be on

14  the bags.  Gallegos stated she was giving Turrubiartez a ride

15  because his car broke down.

16        Officers continued the search of the vehicle and

17  located a large amount of ammunition and two rifles.  The rifles

18  were located in the toolbox of the truck and identified as a CN

19  Romarm AK 7.62-by-39 and an AR-15.  Additionally, officers

20  located 91.6 grams plus or minus 3.5 grams of actual

21  methamphetamine in the vehicle.  Gallegos admits she, along with

22  Turrubiartez, possessed the actual methamphetamine with the

23  intention to distribute it in Midland, Texas.

24        THE COURT:  Did you understand that factual basis as

25  read by the U.S. Attorney?

1          THE DEFENDANT:  Excuse me?

2          THE COURT:  Did you understand that factual basis?

3          THE DEFENDANT:  Yes.

4          THE COURT:  As read by the U.S. Attorney?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Was it accurate, true and correct?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Is that what you did?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Listen carefully while the U.S.

11  Attorney reads Count 2 from your superseding indictment.

12          MS. YOUNG:  Count 2 alleges that on or about June 19th,

13  2017, in the Western District of Texas, Sara Eugenia Gallegos,

14  aided and abetted by Emilio Turrubiartez, Jr. and others, did

15  intentionally, knowingly possess firearms, to-wit: a 38 Special

16  Taurus revolver, Raven Arms, .25 automatic, a Jimenez, .380

17  caliber, a Colt 1911, .45 caliber, a CN Romarm, AK 7.62-by-39,

18  and an AR-15, bearing Serial No. 15188305, in furtherance of the

19  drug-trafficking crime set forth in Count 1 and 3 of this

20  indictment, which drug-trafficking counts are incorporated by

21  reference herein as set forth in full, in violation of Title 18,

22  United States Code, Section 924(c) and Title 18, United States

23  Code, Section 2.

24          THE COURT:  Ms. Gallegos, did you understand the charge

25  contained in Count 2 of your superseding information?

```
1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Read by the U.S. Attorney?

3              THE DEFENDANT:  Yes.

4              THE COURT:  How do you plead to Count 2 of your

5    superseding information, guilty or not guilty?

6              THE DEFENDANT:  Guilty.

7              THE COURT:  Listen carefully while the U.S. Attorney

8    reads the factual basis for Count 2.

9              MS. YOUNG:  And, your Honor, the factual basis would be

10   the same; it's just recited as listed in the plea agreement.

11             THE COURT:  Okay.  Did you understand that, Ms.

12   Gallegos?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Is that what you did?

15             THE DEFENDANT:  Yes.

16             THE COURT:  All right.  It was accurate, true and

17   correct; is that correct?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Ms. Gallegos, are you pleading guilty

20   freely and voluntarily?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you believe you're guilty of these

23   charges?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Has anyone threatened you or forced you in
```

1    any way to get you to plead guilty?

2                 THE DEFENDANT:  No.

3                 THE COURT:  Has anyone made any kind of promise to you

4    other than your plea agreement that's caused you to plead guilty?

5                 THE DEFENDANT:  No.

6                 THE COURT:  Has anyone made any promise or prediction

7    to you as exactly what your sentence will be?

8                 THE DEFENDANT:  No.

9                 THE COURT:  Do you have any question concerning the

10   charges or the facts?

11                THE DEFENDANT:  No.

12                THE COURT:  Ms. Gallegos, the Court makes the following

13   findings of fact and recommendation:

14                I find that you signed a written consent to plead

15   guilty before me.  I find that you, after consultation with your

16   attorney of record, has knowingly and voluntarily consented to

17   the administration of the guilty plea and allocution as caused by

18   a United States Magistrate Judge, subject to the approval and

19   imposition of sentence by the district judge.

20                I find that you and the government have entered into a

21   plea agreement, which has been filed and disclosed in open court

22   pursuant to the Federal Rules of Criminal Procedure 11(c)(2).

23   Ms. Gallegos, I find that you're fully competent and capable of

24   entering an informed plea.  I find that you're aware of the

25   nature of the charges and the consequences of the plea.  And I

1   find that your plea of guilty is a knowing and voluntary plea,

2   supported by an independent basis in fact.

3          I will recommend to the district judge that he accept

4   your plea agreement.  And I will recommend to the district judge

5   that you be finally adjudicated guilty of the offenses you've

6   pled guilty to.

7          Anything further, Ms. Young?

8          MS. YOUNG:  Nothing further on behalf of the United

9   States, your Honor.

10          THE COURT:  Mr. Eckman?

11          MR. ECKMAN:  Nothing further, your Honor.

12          THE COURT:  Ms. Gallegos, I wish you the very, very

13   best.

14          THE DEFENDANT:  Thank you.

15          (Proceedings concludes at 4:45 p.m.)

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3                     REPORTER'S CERTIFICATE

 4

 5     I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING WAS

 6  TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE TIME OF THE

 7  AFORESAID PROCEEDINGS AND IS A CORRECT TRANSCRIPT, TO THE BEST OF

 8  MY ABILITY, MADE FROM THE PROCEEDINGS IN THE ABOVE-ENTITLED

 9  MATTER, AND THAT THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE

10  PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE UNITED

11  STATES.

12

13  /s/Lily I. Reznik                    August 20, 2018

14  LILY I. REZNIK                         DATE

15

16

17

18

19

20

21

22

23

24

25
```