```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
                    MIDLAND-ODESSA DIVISION


UNITED STATES OF AMERICA,          )
                                   ) Case No. 7:17-CR-136
     Plaintiff,                    )
                                   ) Midland, Texas
     vs.                           )
                                   )
SARA EUGENIA GALLEGOS,             )
                                   ) June 7, 2018
     Defendant.                    )
_____) 8:57 a.m.
```

**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE DAVID COUNTS**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**

**FOR THE GOVERNMENT:**   MS. BRANDI YOUNG, AUSA
                          Office of the United States Attorney
                          400 W. Illinois, Suite 1200
                          Midland, Texas   79701


**FOR THE DEFENDANT:**    MR. AARON E. ECKMAN
                          The Law office of Aaron Eckman, PLLC
                          306 W. Wall Street, Suite 822
                          Midland, Texas   79701



**COURT REPORTER:**       MS. ANN M. RECORD, RMR, CRR, CMRS, CRI
                          200 East Wall Street, Suite 222
                          Midland, Texas   79701
                          (432) 685-0361
                          ann_record@txwd.uscourts.gov

      Proceedings reported by machine shorthand reporter.
      Transcript produced by Computer-Aided Transcription.

1              **P R O C E E D I N G S**

2           (At 8:57 a.m., proceedings commenced)

3           (Defendant present)

4           THE COURT:  The Court calls U.S. vs. Sara Eugenia
5  Gallegos, and that's MO:17-CR-136 today for sentencing.  I know
6  we called it yesterday, but let's recall it again.

7           MS. YOUNG:  Thank you.  Good morning, Your Honor.
8  Brandi Young on behalf of the United States.

9           MR. ECKMAN:  Aaron Eckman.  Present and ready on
10 behalf of Ms. Gallegos.

11          THE COURT:  Thank you.

12          Ma'am, are you Sara Gallegos?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Okay.  Good to see you again,
15 Ms. Gallegos.

16          Mr. Eckman, do you have any doubt as to
17 Ms. Gallegos's competence?

18          MR. ECKMAN:  I do not, Your Honor.

19          THE COURT:  And has the defense received a copy of
20 the Presentence Investigation Report prepared in this case?

21          MR. ECKMAN:  We have, Your Honor.

22          THE COURT:  Have you reviewed that with your client?

23          MR. ECKMAN:  We have.

24          THE COURT:  Ms. Gallegos, you've reviewed that report
25 with your attorney; is that correct?

1              THE DEFENDANT:  Yes, Your Honor.
2              THE COURT:  Okay.  And I have received a letter from
3     Katy Gallegos and some photos, which y'all might want back.
4              THE DEFENDANT:  That's my mother.
5              THE COURT:  She may want those photos back.  They're
6     real nice, and I'm happy to give them back to her.  And a Lupe
7     Vasquez.
8              THE DEFENDANT:  That's my aunt.
9              THE COURT:  As well as you.  I think you sent me a
10    letter.  Very nice.  Thank you.  You have very good penmanship
11    too.
12             Mr. Eckman, is there -- are there any objections from
13    the defense to the report?
14             MR. ECKMAN:  Your Honor, I didn't file any written
15    objections; however, I'm going to raise one objection today.
16             THE COURT:  Okay.  Go right ahead.
17             MR. ECKMAN:  The Presentence Report recommends the
18    denial of acceptance of responsibility.  And in this particular
19    case, I'm going to object to that and argue not for the three
20    points that come typically with acceptance of responsibility,
21    but I'm going to argue to the Court for two and, of course, the
22    government is not going to be filing a motion for acceptance of
23    responsibility.
24             THE COURT:  Right.
25             MR. ECKMAN:  Your Honor, under the guidelines for

1  acceptance of responsibility, Section 3E1.1, it provides that a
2  defendant who clearly demonstrates acceptance of responsibility
3  for the offense can decrease the offense level by two levels.
4          Now, typically we see this being a sign when a
5  defendant has accepted responsibility before the Court's
6  scheduling order.  That did not take place in this particular
7  case.  This case went on for a fair amount of time, but I would
8  like the Court to consider when Ms. Gallegos entered the plea
9  of guilty in this particular case.
10         There was an initial indictment that came back on
11 June 21, 2017; and it charged Count One and Count Two.  There
12 was counsel on that case, Mr. Parras, and thereafter close to
13 the trial date was relieved from his duties, and I was
14 appointed to the case.  And after that, a superseding
15 indictment came out.  That superseding indictment was on
16 January 24, 2018.  It added additional counts, Count Three, a
17 conspiracy charge, and Count Four, felon in possession of a
18 firearm.
19         Along with that came some additional discovery
20 related specifically to the conspiracy charge.  Five days after
21 the superseding indictment, Ms. Gallegos entered a plea of
22 guilty.  And I ask the Court to consider that in the
23 determination of acceptance of responsibility.
24         The commentary provides a little more information as
25 to when the two points could be in the Court's discretion

1  considered to be awarded even if it is not a timely plea for a
2  schedule order.
3           In the commentary, 1(a) there are factors that are
4  listed, (a) through (h).  And they say that those factors are
5  not an all inclusive consideration, but they are part of a
6  decision in determining whether or not to award the two points.
7           (a)  Truthfully admitting to the conduct comprising
8  the offense of conviction and truthfully admitting or not
9  falsely denying any additional relevant conduct for which one
10 is accountable.
11          Here, as in the Presentence Report, it is shown that
12 Ms. Gallegos has continued to accept responsibility, and we're
13 not arguing today denying any of the relevant conduct.
14          I also would like the Court to consider (e) in this
15 calculation, which is voluntary assistance to authorities in
16 the recovery of the fruits and instrumentalities of the
17 offense.
18          And, you know, in this particular case, there were
19 attempts to provide assistance.  And at this point, it is not
20 fruitful.  But I would like the Court to take into
21 consideration the attempt of that endeavor.
22          Also, lastly, within the commentary, I would like the
23 Court to consider Application Note No. 3 where it says:  Entry
24 of a plea of guilty prior to the commencement of trial combined
25 with truthfully admitting the conduct comprising the offense of

 1  conviction and truthfully admitting but not falsely denying any
 2  additional relevant conduct for which is accountable will
 3  constitution significant evidence of acceptance of
 4  responsibility for the purposes of (a).  And (a) being the
 5  portion in which the Court can award the two points for
 6  reduction, not by motion of the government for that third
 7  point.
 8          It does go on to say that this might be outweighed by
 9  inconsistent conduct, but it's our position that there hasn't
10  been that type of inconsistent conduct, and that she continues
11  to accept responsibility for the actions.
12          That's what I would like the Court to consider under
13  the commentary for the guidelines.  And in weighing that
14  decision, I would just put to the Court that once the
15  superseding indictment came out, the calculus for determining
16  whether or not to go to trial when the trial strategy related
17  to Count One changed, changed considerably.  And also on top of
18  that, the discovery provided a little bit more light into what
19  she could consider in that decision-making process.
20          And, again, I would like the Court to consider the
21  speed in which she did go forward with that guilty plea five
22  days after that new superseding indictment and, you know,
23  honestly consider the role when counsel comes on to a case and
24  that calculus changes as well.  So I put that to the Court for
25  consideration of a two-level reduction for acceptance of

 1  responsibility that comes from the Court and not the
 2  government.
 3          THE COURT:  Thank you.
 4          Your response to that, Ms. Young.
 5          MS. YOUNG:  Yes, Your Honor.  I would like to put a
 6  few things in context.  First, I think Mr. Eckman makes a very
 7  good argument.  And listening to it here, I think without a
 8  little bit of context it would be a very persuasive argument,
 9  maybe even to the government.
10          First, I would like to address timing issue.  The
11  superseding indictment was presented to the grand jury.  And
12  that indictment was returned on January 24, 2018.  That is
13  correct.  And the defendant did enter a plea shortly
14  thereafter.
15          That superseding indictment was only presented after
16  negotiations for months and months and months had failed in
17  regards to -- there was no surprise.  It was coming.  It was
18  part of the negotiations because this case was set for trial
19  February 5, 2018.
20          And as this Court knows, I believe Your Honor heard
21  numerous hearings with Ms. Gallegos with her previous attorney
22  in regards to all of her desires to keep him and retain him and
23  she was going to get him paid.  And that she even, I believe,
24  on the record at one time said, "No, no, no, I'm a user.  I
25  want to plead to being a user, not to this."

 1          And then it's not until confronted with the fact that
 2   the government is able to go out to Arizona and ascertain that
 3   she is, in fact, a convicted felon, that is, for a prior drug
 4   offense.  All of these thing were presented to Ms. Gallegos
 5   with assistance of counsel prior to presentation of that
 6   superseding indictment.  And Ms. Gallegos, which is certainly
 7   her right, at that point in time, with the assistance of
 8   counsel, was choosing to proceed towards trial.
 9          Based on those facts, the government did go to the
10   grand jury with this newly learned information, the superseding
11   indictment was returned, and Ms. Gallegos did change her mind.
12          But I think timing is important here.  It's not
13   timing of, well, there was a superseding indictment.  We got
14   some more discovery we didn't know about, and we came in and
15   pled some very few days later.  This information was told.  It
16   was explained.  It was explained to her in numerous status
17   conferences.  Ms. Gallegos had ample opportunity to make these
18   decisions -- and, again, those are certainly her decisions to
19   make.
20          But we were set for trial February 5.  The government
21   was preparing for trial.  Witnesses had to be writted back from
22   BOP custody.  Things that had to occur.  So timing I think is
23   an argument that doesn't necessarily go towards supporting the
24   Court's awarding of the acceptance of responsibility.
25          In addition, as I've alluded to, I understand

1  Mr. Eckman during his period of representation -- and his
2  representation to the Court, I believe, would be accurate --
3  that Ms. Gallegos has been consistent.  She certainly was
4  extremely inconsistent from June 21, 2017, till she ultimately
5  entered that guilty plea in January 2018.
6           And for those reasons, we don't believe that
7  acceptance of responsibility should be awarded.
8           THE COURT:  The Court finds Mr. Eckman's argument
9  compelling, though I certainly remember the history of this
10 case as Ms. Young does as well.
11          The Court in looking at the report -- what I don't
12 want to do is confuse whether or not Ms. Gallegos has clearly
13 accepted responsibility for her offense versus all of the
14 confusion that occurred toward that superseding indictment
15 happening and the changing of the guard as far as attorneys.
16          Because of that, I'm going to err on your side and
17 agree that acceptance of -- the two points from the Court will
18 be awarded to you.  So that will change us to a base offense
19 level 36, okay?
20          THE DEFENDANT:  Thank you.
21          THE COURT:  Yes, ma'am.
22          MS. YOUNG:  In accordance with the plea agreement,
23 the government would award the third point also because we do
24 follow the Court's guidance on that.
25          THE COURT:  Oh, okay.  So 35 then?  Thank you,

1  Ms. Young.  I thought you were going to tell me I did something
2  wrong.  You'll tell me later?  Okay.  All right.  Appellate
3  court will tell me when I did it.
4          So now, with that, so the objection on acceptance of
5  responsibility is granted, and you're awarded three base
6  offense levels.  We talk in terms of three points, but they're
7  three levels, really.  And I just want to make sure it's clear,
8  Ms. Gallegos.
9          Mr. Eckman, with that, are there other objections
10 from the defense?
11         MR. ECKMAN:  No, Your Honor.
12         THE COURT:  Ms. Young, any objections from the
13 government?
14         MS. YOUNG:  No objections, Your Honor.
15         THE COURT:  The Court then will state that I've
16 reviewed the Presentence Investigation Report prepared by U.S.
17 Probation Officer Kristen Worthy.  I find the report to be
18 accurate now as we've altered it and granted the -- the Court
19 has granted acceptance of responsibility and I adopt that and
20 the application of the guidelines that we're about to tally.
21         Anything change?
22         PROBATION OFFICER:  She is looking at a range of
23 imprisonment from 168 months to 210 months, Your Honor.
24         THE COURT:  Okay.  And the supervised release stays
25 the same?

```
 1              PROBATION OFFICER:  Correct, Your Honor.
 2              THE COURT:  As well as the fines?
 3              PROBATION OFFICER:  Oh, the fine has been changed.
 4   It is 40,000 to 10 million, Your Honor.
 5              THE COURT:  Okay.  It didn't change much, did it?
 6              PROBATION OFFICER:  No, Your Honor.
 7              THE COURT:  What's 10,000 among friends?
 8              All right.  So the Court finds then, Ms. Gallegos, a
 9   total base offense level 35.
10              Criminal history category I.
11              That criminal history category helps you a ton.  I
12   mean, I know you think you're looking at a lot of time and you
13   are.  But if you had had a II or III or IV, it would have been
14   that much worse no matter what the acceptance of responsibility
15   credit would do.  It's very fortunate for you because I don't
16   like the way this all went down.  I don't like the way you
17   acted slow to get out of the vehicle obviously doing some
18   things.  But criminal history category I is good.
19              So next time -- if there is a next time -- and I know
20   you're about 32 or 33 now, right?
21              THE DEFENDANT:  33.
22              THE COURT:  33.  So next time, it is certainly going
23   to be a Category II if you get into federal trouble, and that's
24   going to be like the rest of your life probably if you look at
25   this sentence plus anything following.  I'm not saying you
```

1  will.  I'm just saying -- you need to know that, be aware of
2  that.
3          So that puts us at a total guidelines then for Count
4  One 168 to 210 months.  For Count Two, it's 60 months, five
5  years, to run consecutively to Count One.
6          Five years of supervised release on Count One.  For
7  Count Two, two to five years.
8          You're ineligible for probation.
9          The guidelines give us a fine range of $40,000 to
10 $10 million.
11         And the special assessment of $100 for each count.
12 That's $200, okay?
13         So, Mr. Eckman, what would you have the Court then
14 consider at this time?
15         MR. ECKMAN:  Your Honor, we would have the Court
16 consider under the factors in imposing a sentence sufficient
17 but not greater than necessary specifically 2(b) to afford
18 adequate deterrence to criminal conduct.  Now that the
19 guidelines have been recalculated to 168 to 210 months, we are
20 asking the Court to consider a sentence at the low-end of the
21 guidelines at 168.  And with that -- on Count One.
22         And with that, I would ask the Court to consider that
23 that amount of time, 168 plus another 60 months that's
24 mandatory to serve consecutive, would be plenty enough time to
25 deter future criminal conduct.

1            As the Court just asked Ms. Gallegos's age of 33, if
2  we do rough math on that amount of time, we're looking at not
3  being released until sometime after she is -- good time credit,
4  around 50 years old, maybe a little less.  And I think with
5  that deterrence and her age would weigh towards crafting a
6  sentence that's not greater than necessary.
7            Also to protect the public from further crimes.  At
8  that point, I think the criminal potential is lessened.  So
9  that's why I would ask the Court to consider crafting a
10 sentence at the low-end of this guidelines.
11           The other issue I would like to point out to the
12 Court, which the Court has already alluded to, that
13 Ms. Gallegos has only one criminal history point.  And as --
14 that as the offense is described in the factual basis and the
15 Presentence Report, I would like the Court to consider that,
16 especially in determining the appropriate range of the
17 guidelines and specifically in dealing with not creating
18 unwarranted sentencing disparities among defendants with
19 similar records.
20           There is harsh punishment for actual methamphetamine
21 guidelines, and that is where she is on this particular case
22 and through relevant conduct with a tremendous amount, over
23 50 kilos, attributed to her.
24           So I ask the Court to consider somebody with one
25 criminal history point and that amount of actual

1 methamphetamine under the guidelines as written today, you
2 know, a sentence at the low-end of these guidelines to be
3 appropriate under the 3553 factors.
4     And I would also like to just point -- this is kind
5 of a persuasive issue on actual methamphetamine cases.  I do
6 think in time as we look at the guidelines and await what the
7 Commission does in the future, that there is some disparity
8 between the guidelines for actual methamphetamine and then the
9 reality of mixture and substance.
10     And as the cases have progressed over the years, so
11 few come back with mixture and substance and so many more come
12 back with actual methamphetamine.  But that in itself has made
13 the weight of this case much more higher than it would have
14 been if it simply was a mixture and substance.
15     THE COURT:  Sure.  It did.
16     MR. ECKMAN:  Your Honor, I put those to you to
17 consider under the 3553 factors and would put to the Court that
18 a reasonable sentence under the parsimony principle would be
19 168 months on the low-end plus the consecutive 60 months for
20 the furtherance of a drug crime with firearms.
21     THE COURT:  So, Ms. Gallegos, if I do that,
22 Mr. Eckman has saved you over five and a half years on the
23 low-end.
24     THE DEFENDANT:  I am really --
25     THE COURT:  What would you like to say?

1    THE DEFENDANT:  All I can say is I feel sorry -- I'm
2 sorry for all the waste of time that I did to Ms. Brandi Young,
3 Your Honor, the system, the court.  I wish my family were here
4 today.  They were here yesterday, but they canceled my court.
5    THE COURT:  Okay.  And just keep in mind, I didn't
6 cancel your court.
7    THE DEFENDANT:  Yeah, yeah, I know.
8    THE COURT:  That was for your benefit.
9    THE DEFENDANT:  My family was here yesterday.  They
10 are not here, but I would apologize to them and especially my
11 kids because I have the best parents, like, in the world.
12 There is no reason why I did all this.  None.  It has nothing
13 to do with my parents.  They raised me good.  It was my bad
14 decisions who did all these wrong choices.  I'm sorry for
15 everything.
16    THE COURT:  Thank you.
17    Ms. Young.
18    MS. YOUNG:  Just we'll start with Mr. Eckman alluded
19 to the prior conviction and the one criminal history point as a
20 factor to consider.  In looking at that, the conduct detailed
21 in Paragraph 29, Ms. Gallegos is a drug dealer.  This is what
22 she does.  Because in that instance, she left California where
23 she was, traveled to the Midwest, got a car registered in her
24 name, traveled and trafficked down methamphetamine to Arizona,
25 got caught down there.  Was able to avail herself of all of the

1  options she had there and manages to walk away from that case
2  with a one-year state probation.
3           That wasn't long ago.  We're not talking about
4  someone that messed up at 18 and has had one hiccup along the
5  way with one criminal history point.  That was 2009.  And
6  that's for traveling all over the West to deal methamphetamine
7  with the same organizations, the same group of people.
8           And then we come here on this charge, and she is
9  encountered with Mr. Turrubiartez and spends months making a
10 mockery of this court, making a mockery of everything saying,
11 "Oh, I'm just a user.  I don't know anything.  I'm not anybody.
12 I don't know," saying these things on the record.  That's not
13 just presenting a defense and changing a strategy.  That's
14 trying to convince everyone, including the Court, that her role
15 and who she is is someone than who she really is.
16          And it is not until other information is learned
17 that -- and she is confronted with, in fact, oh, now we figured
18 out even though you were under a different name, here's what
19 you were doing back in 2009.  Here's what's going on.  And
20 she's confronted on those things that we come into court today
21 with this, "I'm so sorry and" -- that's not been the picture
22 here.  That's not what she's done.  And we would ask for a top
23 of the guideline sentence, 210 months, on Count One.
24          THE COURT:  Thank you.
25          The Court does not depart from the recommended

```
 1  sentence as now revised.
 2              Pursuant to the Sentencing Reform Act of 1984, which
 3  I have considered in an advisory capacity, and the sentencing
 4  factors set forth in 18 U.S.C., Section 3553(a), which I have
 5  considered in arriving at a reasonable sentence, I find the
 6  guideline range in this case to be fair and reasonable as it
 7  now stands.
 8              The defendant is placed in the custody of the United
 9  States Bureau of Prisons to serve a term of imprisonment for
10  Count One of 180 months and for Count Two, for 60 months to run
11  consecutively to the term of imprisonment for Count One.
12              Upon release from the Bureau of Prisons, you are
13  placed on supervised release for a term of five years.
14              The mandatory and standard conditions of supervised
15  release are imposed.
16              You're a naturalized citizen now, right?
17              THE DEFENDANT:  Yes, I am.
18              THE COURT:  All right.  Good.
19              There will be no fine.  I don't believe you have an
20  ability to pay a fine nor do I want to burden your family with
21  that.
22              There is a $100 mandatory special assessment for
23  Count One and, again, for Count Two --
24              Yes, ma'am.
25              PROBATION OFFICER:  Judge, just to clarify.  You said
```

```
 1  five years of supervised release.  You didn't mention Count One
 2  and Count Two, concurrently.
 3              THE COURT:  Concurrent.  Thank you.
 4              And then $100 each for Counts One and Two.  That's
 5  $200 that you're required to pay to the Crime Victims Fund.
 6              The Presentence Report will be sealed.
 7              You have the right to appeal, assuming you've not
 8  given up that right in reaching your plea agreement.  And your
 9  Notice of Appeal in that instance would be required to be filed
10  in writing within 14 days of the entry of this judgment.  If
11  you're unable to afford an attorney on appeal for appeal, then
12  the court will appoint one for you.  If you're unable to afford
13  the transcript of the record in the case, that will be provided
14  for you as well.
15              And I'll tell you, I don't -- you know, I don't buy
16  the "I'm sorry.  I just made a mistake."  I mean, I've read the
17  report, and I remember the case.  And you finally got caught
18  and you finally got caught with a lot.  I mean, over 5 keys, as
19  I recall.  Not caught with.  That's what you're responsible
20  for.
21              So if you want to split hairs with me, you can; but
22  you know what you did.  We all know what you did.  I think you
23  should know that we all know.  And the trial would have been --
24  like, I think, for the government, probably would have been
25  like teaming up and just letting lose on you, and you would
```

1  have been looking at a lot more time.
2          You got great counsel from not one, but two really,
3  really good lawyers.  And, you know, when you come back, you'll
4  be older.  You'll be hopefully more maturer and wiser, and
5  you'll decide if you want to continue this.  Maybe you think
6  you don't have any choice but to continue it, but we'll see.
7  Whoever is here will deal with you then, whether it's me or
8  someone else, Ms. Young or someone else, Mr. Eckman or someone
9  else.
10         Mr. Eckman, is there anything more from Ms. Gallegos?
11         MR. ECKMAN:  Your Honor, I would like the Court to
12 consider a recommendation for placement at Victorville in
13 California.  That's where her children are, for visitation of
14 her children.
15         THE COURT:  Okay.  We'll make the recommendation.
16         Ms. Young?
17         MS. YOUNG:  The government would move to dismiss
18 Counts Three and Four of the superseding indictment.
19         THE COURT:  That motion is granted.  Those are
20 dismissed.
21         Ms. Gallegos, and I'll offer these photos.  They are
22 a couple of photos.
23         Mr. Eckman, may I give those to you for maybe return
24 to her family?
25         MR. ECKMAN:  Yes, Your Honor.

Case 7:17-cr-00136-DC Document 102 Filed 08/23/18 Page 20 of 20

20

USA vs. Gallegos - Sentencing - June 7, 2018

1 THE COURT: I think they would like to have them.
2 They're going to go into a file here.
3 Is it Katy? I think Katy maybe sent those. I don't
4 recall.
5 Ms. Gallegos, you are remanded to the custody of the
6 United States Marshals to serve your sentence. I wish you the
7 best. Good luck.
8 (Proceedings concluded at 9:22 a.m.)
9 * * * * *

10 **C E R T I F I C A T E**

11

12 I, ANN M. RECORD, RMR, CRR, CMRS, CRI, Federal
13 Official Court Reporter, certify that the foregoing is a
14 correct transcript from the proceedings in the
15 above-entitled matter.

16
17
18              _/s/Ann M. Record_
   Date: 8/23/2018    Ann M. Record, RMR, CRR, CMRS, CRI
19                    United States Court Reporter
                      200 East Wall Street, Suite 222
20                    Midland, Texas  79701
                      Telephone: (432) 685-0361
21                    e-mail: ann_record@txwd.uscourts.gov
22
23
24
25

Ann M. Record, RMR, CRR, CMRS, CRI *********** (432) 685-0361
ann_record@txwd.uscourts.gov